Dear Representative Surface:
This opinion letter is in response to your question asking whether Section 19-31 of the Joplin City Code imposing a license fee upon "truck terminals or truck loading and unloading depots" violates Section 390.126.2, RSMo 1986.
Section 390.126.2, RSMo 1986, provides:
 2. No other or additional policies, bonds or licenses than those prescribed in this chapter shall be required of any motor carrier to which the provisions of this chapter apply by any city, town or other subdivision of the state; provided, that this section shall not be so construed as to interfere with the right of any county, city or other civil subdivision of the state, to levy and collect any property tax to which such motor carrier is liable under the general revenue laws of this state within such county, city or other civil subdivision wherein the property of such motor carrier may be subject to assessment and taxation.
(Emphasis added.)
Based on the information you have provided, we understand a motor carrier as defined by Section 390.020(17), RSMo 1986, thus subject to the provisions of Section 390.126.2, has a terminal for its trucks in Joplin, Missouri. The City of Joplin requires under its code a license to operate a truck terminal or truck loading and unloading depot. It is our understanding further that this motor carrier uses its terminal only for its vehicles and does not act as a depot or terminal for other vehicles or as a truck stop available to all motor vehicles along the highways and to the traveling public.
In City of Nevada v. Bastow, 328 S.W.2d 45 (Mo.App. 1959), the owner of a tractor-trailer truck was charged with failure to purchase a city license as required by city ordinance. The appellate court ruled the city was not authorized to impose such license tax on the owner of the tractor-trailer truck. In discussing Chapter 390 and, in particular, Section 390.126.2, the appellate court stated:
 Chapter 390, in addition to its regulatory provisions as to motor carriers, levies taxes and license fees against them, and then declares that no additional license shall be required of them by any city or town. The quoted clause of Section 390.126, subd. 2 seems to be plain and unambiguous in its meaning. Any doubt as to its reasonable meaning is further clarified by the provision that it shall not be construed so as to interfere with the right of any city to collect any property tax to which such motor carrier is liable under the general revenue laws. By removing "property tax" from the ban against city taxation the legislature clearly indicated its intention that the exemption should apply to all other city taxes — certainly as to all city licenses.
(Emphasis added.)
What the City of Joplin has done is to indirectly license the motor carrier by requiring a license for its terminal. There is simply no practical difference in this case between the motor carrier and its terminal, they are basically one and the same. We do not believe that the City of Joplin can avoid the exemption in the statute by placing the requirement of the license on the terminal under the facts in this case. There may be factual distinctions between how this particular motor carrier operates and other motor carriers. To allow the City of Joplin to impose such licensing requirements is contrary to the express provisions of Section 390.126.2. Therefore, in the situation about which you are concerned, it is the opinion of this office that the City of Joplin may not impose a license fee on the truck terminal in question.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General